**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | § | |
|---|---|---|
| IN RE: | § | CASE NO: 21-11127 |
| | § | |
| LINDSAY YORK FANTACI, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | SECTION A |
| | § | |

## MEMORANDUM OPINION AND ORDER

The Court held a hearing on Wednesday, June 7, 2023, to consider the *Motion To Pay Interim Distribution to General Unsecured Creditors and Trustee* (the "Motion") filed by David V. Adler (the "Trustee"), [ECF Doc. 491]; the Opposition to the Motion filed by Michael Fantaci, [ECF Doc. 493]; and responses filed in support of the Motion filed by the Trustee and on behalf of Lindsay York Fantaci MD, LLC [ECF Docs. 502 & 506]. The Court took the matter under advisement on June 7, 2023, and instructed the Trustee to file into the record a supplement to Exhibit B attached to the Motion. [ECF Doc. 508]. The *Trustee's Supplement to Exhibit B Attached to the Motion To Pay Interim Distribution* (the "Supplement") was filed on June 14, 2023. [ECF Doc. 511]. On September 5, 2023, this Court granted Mr. Fantaci leave to file a supplemental opposition to the Motion to address arguments raised by the Trustee. [ECF Docs. 532 & 535].

Considering the pleadings, the record, and applicable law, the Motion is **GRANTED**.

### JURISDICTION AND VENUE

This Court has jurisdiction to hear this adversary proceeding pursuant to 28 U.S.C. § 1334. The matter presently before the Court constitutes a core proceeding that this Court may hear and

determine on a final basis under 28 U.S.C. § 157(b)(2). The venue of this case is proper under 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL BACKGROUND

Lindsay York Fantaci (the "<u>Debtor</u>") and Michael Fantaci were married in June of 2000. [ECF Doc. 411]. The Debtor filed for divorce in August of 2020. *Id*. On October 15, 2021, the state court entered a *Judgment of Divorce* terminating the community property regime between the Debtor and Mr. Fantaci, but did not partition community property. *Id*. The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on September 9, 2021. *Id*.

The divorce proceedings between the Debtor and Mr. Fantaci have been contentious and have resulted in several years of protracted, costly litigation. *Id*. The animus between the parties did not stop at the doors to the bankruptcy court. On March 10, 2022, the Court converted the Debtor's case to one under chapter 7 of the Bankruptcy Code and the Trustee was appointed to administer the Debtor's case. [ECF Docs. 166 & 167]. On March 20, 2022, creditors were notified of the need to file proofs of claim on or before June 21, 2022, due to the Trustee's recovery of assets. [ECF Docs. 175 & 179].

After good-faith, albeit unsuccessful, attempts to achieve a global settlement of all of the claims among the Debtor, Mr. Fantaci, the Debtor's medical practice (also a debtor in a separate case), and the Trustee representing the estate, on October 5, 2022, the Trustee filed a *Motion To Approve Compromise with Michael Fantaci*, seeking Court approval to settle numerous issues and claims between the estate and Mr. Fantaci. [ECF Doc. 411]. In making the case that the settlement proposed by the Trustee and Mr. Fantaci was fair and equitable and in the best interest of the estate and its creditors, the Trustee represented:

> The proposed compromise **effectuates a speedy and just resolution of a multitude of disputes between Michael [Fantaci] and the Trustee, including**

> **without limitation**, (i) disputes relating to the allowance of Michael's large proofs of claim, (ii) disputes over property of the Bankruptcy Estate, (iii) disputes over relief from the stay, (iv) disputes regarding this Court's jurisdiction, (v) disputes over whether the case should be dismissed, (vi) disputes over the allowance of the Fantaci MD Claim in the Bankruptcy Case, (vii) disputes over the allowance of the Trustee's proof of claim in the Fantaci MD LLC Case, (viii) disputes raised in Adversary No. 22-1011 filed by Fantaci MD LLC against Michael (which will be dismissed prejudice [*sic*]), (ix) **disputes over the allocation of funds for payment of claims and administrative expenses under 11 U.S.C. § 726, and more.** It places due consideration on (a) the uncertainties in litigation, including areas of fact and law affecting the claims at issue, and the probability of success by the Trustee in obtaining a more favorable outcome for the creditors of the Bankruptcy Estate should these matters proceed to trial, and (b) the expense and delay associated with additional discovery and potentially protracted litigation to resolve the various claims.

[ECF Doc. 411, ¶ 21 (emphasis added)]. The only dispute that the parties carved out of the global settlement between them pertained to amounts due to Mr. Fantaci's law firm under certain contingency fee contracts associated with opioid tort liability lawsuits (the "Opioid Funds Carve-Out"). Otherwise, the settlement between the two was designed to settle and release all claims between Mr. Fantaci and the estate completely and mutually.

That motion drew objections from the Debtor and a third-party creditor of the estate. [ECF Docs. 415 & 417]. All objections were resolved and withdrawn prior to the scheduled evidentiary hearing and the Court approved an amended settlement on November 23, 2022 (the "Amended Settlement Agreement"), finding that the proposed amended settlement was fair and equitable and in the best interests of the bankruptcy estate and its creditors. [ECF Doc. 450].

The Amended Settlement Agreement, approved and attached to this Court's November 23, 2022 Order, contained broad releases by the parties:

> 9. Release by Bankruptcy Estate of Michael [Fantaci]. Except as otherwise provided in this Agreement, the Trustee, on behalf of the Bankruptcy Estate, agrees to settle and release Michael, his agents, representatives, shareholders, members, firms, and attorneys, from all claims, demands, damages, causes of action, duties, liabilities, responsibilities or obligation of every kind and nature, known and unknown, past, present and future, asserted and unasserted, that are related to, arise

3

> out of, or are in any way connected with acts or omissions that took place prior to the date of this Agreement—including, without limitation, those claims and facts that were alleged, or that could have been alleged in, or that in any way arise out of or relate to the Bankruptcy Case, any state court actions or proceedings, or any Bankruptcy Court actions or proceedings.
>
> 10. <u>Release by Michael of Bankruptcy Estate</u>. Except as otherwise provided in this Agreement, Michael agrees to settle with and release the Bankruptcy Estate, and its past, present, and future trustees, employees, agents, representatives, and attorneys, from all claims, demands, damages, causes of action, duties, liabilities, responsibilities or obligations of every kind and nature, known and unknown, past, present and future, asserted and unasserted, that are related to, arise out of, or are in any way connected with acts or omissions that took place prior to the date of this Agreement—including, without limitation, (i) those claims and facts that were alleged, or that could have been alleged in, or that in any way arise out of or relate to the Bankruptcy Case, any state court actions or proceedings, or any Bankruptcy Court actions or proceedings, and (ii) all claims, demands, damages, causes of action, duties, liabilities, responsibilities or obligations of every kind and nature, known and unknown, past, present and future, asserted and unasserted, that were or could have been asserted by Michael in proofs of claim against the Bankruptcy Estate or as administrative claims against the Bankruptcy Estate.

[ECF Doc. 450, Ex. 1, §§ 9 & 10].

By May 2023, the Trustee had administered the majority of the assets of the estate, including selling the family home, settling turnover demands, settling claims against third parties, and collecting tax refunds. The Trustee then received Court approval to make an interim distribution and paid all administrative and priority unsecured claims in full, the Trustee's counsel's first approved interim fee order, and his own statutory commission due through December 2022. [ECF Docs. 465 & 466]. On May 12, 2023, the Trustee filed the instant Motion, seeking to make another interim distribution to general unsecured creditors equal to 45.54% of the total undisputed claim amounts and a second interim distribution of his own statutory commission. *See* Motion, ¶¶ 4–7.

In his opposition to the Motion, Mr. Fantaci asserted that the Trustee had not shown that he has segregated separate and community property and that his proposed distribution complies

4

with § 726(c) of the Bankruptcy Code. [ECF Doc. 493].[1] Essentially, Mr. Fantaci does not want community funds to be used to pay the Debtor's separate debts. *See id*. To that end, Mr. Fantaci contests the validity and amount of certain proofs of claim that the Trustee seeks to pay through the proposed interim distribution and challenges the Trustee's characterization of certain proofs of claim as community debts. *See id*.

At the hearing on the Motion, the Court required the Trustee to file the Supplement containing his § 726 analysis of separate and community debts into the record. But the Trustee also raised the issue of Mr. Fantaci's standing to be heard in this contested matter. [ECF Docs. 502 & 511]. So before addressing the Supplement and the merits of the Motion, the Court first turns to the standing of Mr. Fantaci to object to the Motion and to assert claim objections in this case.

---

[1] In situations in which community property has passed to the estate, § 726(c)(2) requires that it be segregated from other property of the estate into four "sub-estates" as follows:

(A) First, community claims against the debtor or the debtor's spouse shall be paid from property of the kind specified in section 541(a)(2) of this title, except to the extent that the property is solely liable for debts of the debtor.

(B) Second, to the extent that community claims against the debtor are not paid under subparagraph (A) of this paragraph, these claims shall be paid from property of the kind specified in section 541(a)(2) of this title that is solely liable for debts of the debtor.

(C) Third, to the extent that all claims against the debtor including community claims against the debtor are not paid under subparagraph (A) or (B) of this paragraph such claims shall be paid from property of the estate other than property of the kind specified in section 541(a)(2) of this title.

(D) Fourth, to the extent that community claims against the debtor or the debtor's spouse are not paid under subparagraph (A), (B), or (C) of this paragraph such claims shall be paid from all remaining property of the estate.

11 U.S.C. § 726(c)(2).

## DISCUSSION

### A. Mr. Fantaci Has Not Met His Burden To Demonstrate a Reasonable Expectation of a Surplus in this Case and, Therefore, Has No Standing To Object to the Motion or To Assert Objections to Proofs of Claim in this Case.

Mr. Fantaci asserts that he "has standing to object to a distribution by the Trustee that will affect whether or not there is a surplus in which he has an interest." [ECF Doc. 535, ¶ 3].

Section 502 of the Bankruptcy Code states that a claim is allowed unless a "party in interest" objects. See 11 U.S.C. § 502(a). The term "party in interest" is not defined in the context of chapter 7. *See Pascazi v. Fiber Consultants, Inc.*, 445 B.R. 124, 127 (S.D.N.Y. 2011). In light of the Bankruptcy Code's directive to the chapter 7 trustee to examine proofs of claim and object to improper proofs of claim, *see* 11 U.S.C. § 704(a)(5), most courts have found that only the trustee may object to proofs of claim, *see, e.g., In re Watson*, No. 03-13355, 2004 WL 3244420, at *1 (Bankr. M.D. La. Sept. 29, 2004) (citing cases); *In re Manshul Constr. Corp.*, 223 B.R. 428, 430 (Bankr. S.D.N.Y. 1998). To permit otherwise would "usurp the trustee's authority and . . . require the courts to rule on objections where the allowance or disallowance of the claim is meaningless to the administration of the estate." *In re Baker Sales, Inc.*, No. 13-12693, 2022 WL 362908, at *3 (Bankr. E.D. La. Feb. 7, 2022) (quoting *In re I & F Corp.*, 219 B.R. 483, 484 (Bankr. S.D. Ohio 1998)). Accordingly, "[a]s a majority rule, courts . . . have limited the right of a general creditor to object to a claim of another creditor . . . in order to promote a more orderly administration of the estate." *In re Manshul Constr. Corp.*, 223 B.R. at 430 (internal quotation and citation omitted).

An exception to that general rule is that a debtor or equity interest holder may have standing to object to proofs of claim if there is a reasonable possibility of a surplus after all claims are paid. *See Khan v. Xenon Health, L.L.C. (In re Xenon Anesthesia of Tex., P.L.L.C.),* 698 F. App'x 793, 794 (5th Cir. 2017) (citations omitted); *Pascazi*, 445 B.R. at 127 (citations omitted). The exception

presumes that, in the event of a surplus, a debtor or equity interest holder may have a pecuniary interest that would justify a claim objection. *See Pascazi*, 445 B.R. at 127.[2] But a surplus is "highly unlikely in a liquidation proceeding, and . . . standing based on a potential surplus is unlikely to succeed." *In re Manshul Constr. Corp.*, 223 B.R. at 430 (citing *In re Martin*, 201 B.R. 338, 344 (Bankr. N.D.N.Y. 1996)). Indeed, in most chapter 7 cases, a debtor or equity interest holder "will have no identifiable interest in the outcome of claim objections." *In re Morgan*, No. 05-34981, 2007 WL 2669341, at *3 (Bankr. N.D. Tex. Sept. 6, 2007).

To have standing to object to proofs of claim here, Mr. Fantaci has the burden of demonstrating a reasonable possibility of a surplus. *See In re Mohr*, 538 B.R. 882, 885 (Bankr. S.D. Ga. 2015) (citing cases). Courts have not specified a method for calculating a potential surplus. This Court and others at times have looked to the debtor's schedules to determine if a surplus exists. *See e.g., In re Baker Sales, Inc.*, 2022 WL 362908, at *4; *In re Watson*, 2004 WL 3244420, at *1; *In re Toms*, 229 B.R. 646, 646 (Bankr. E.D. Pa. 1999). This case has been pending for two years and the Trustee has now administered the majority of the assets of the estate. Thus, the Court and the parties now have a practical view of the solvency of this estate. After making an interim disbursement to pay all pending administrative and priority claims, the Trustee shows that he has $798,664.74 cash on hand. *See* Motion, Ex. A. Outstanding general unsecured claims total $1,098,170.00. *See id*. Given the funds available and the outstanding obligations to

---

[2] Courts have also conferred standing on debtors or creditors to object to proofs of claim in chapter 7 cases where the trustee has unjustifiably refused a request to object to a claim. *See, e.g., In re Curry*, 409 B.R. 831, 838 (Bankr. N.D. Tex. 2009) (citation omitted); *In re Manshul Constr. Corp.*, 223 B.R. at 430-31 (*In re Thompson,* 965 F.2d 1136, 1147 (1st Cir. 1992); *In re The Charter Co.*, 68 B.R. 225, 227 (Bankr. M.D. Fla. 1986)). No allegations have come before the Court to suggest that the Trustee here has unjustifiably refused a request to object to a proof of claim.

unsecured creditors, the Court does not find that a reasonable possibility of a surplus exists in this case.[3]

Therefore, the Court finds that Mr. Fantaci has not met his burden to demonstrate a reasonable expectation of a surplus in this case and finds that he has no standing to object to the Motion or to assert objections to proofs of claim in this case.

### B. The Court-Approved Settlement Agreement Between Mr. Fantaci and the Trustee Precludes Mr. Fantaci from Objecting to the Motion or Asserting Objections to Proofs of Claim in this Case.

The Trustee has asserted, and the Court agrees, that, apart from the Opioid Funds Carve-Out, the Amended Settlement Agreement approved by this Court settled and released all claims between Mr. Fantaci and the estate completely and mutually. [ECF Docs. 502 & 511]. In addition to the broad releases quoted above, the Amended Settlement Agreement also provides:

> Claim Objections. The Trustee will review the proofs of claim filed in the Bankruptcy Case in accordance with § 704(a)(5) and will object to any claim that the Trustee deems is improper. Michael [Fantaci] agrees to cooperate, as requested by the Trustee, with the review of the claims.

[ECF Doc. 450, Ex. 1, ¶ 6].[4] Thus, even if Mr. Fantaci could demonstrate a reasonable possibility of a surplus in this case that would confer his standing to object to the Motion or to assert objections

---

[3] Although the Trustee has disputed one proof of claim filed in the amount for $232,191.17 and has filed an adversary proceeding against third parties for turnover of jewelry alleged to be valued at approximately $86,575.00, *see Adler v. York*, Adv. No. 23-1030 (Bankr. E.D. La. filed Sept. 8, 2023), the prosecution of those matters will generate administrative costs for the estate. Given the costs and inherent risk of litigation, the Court finds that the needle is not moved significantly enough to cause the Court to find that the estate will generate a surplus.

[4] The Amended Settlement Agreement also contained a provision that contemplated the contingency of a surplus in the case:

> Treatment of Any Surplus Funds. **In the event this is a surplus case** and Michael and Debtor have not reached an agreement on (i) the division of such surplus or (ii) an agreed repository for the funds pending Michael and Debtor's agreement on a division of the surplus, the Trustee may deposit such surplus funds in the registry of the Bankruptcy Court.

[ECF Doc. 450, Ex. 1, ¶ 8 (emphasis added)]. But that event has yet to occur.

to proofs of claim, the fact remains that he bargained his participation rights away to the Trustee in exchange for considerable concessions and releases by the estate.

### C. The Court Finds the Proposed Interim Distribution To Be in the Best Interests of the Estate.

According to the Trustee's representations, he is holding $60,521.63 of the Debtor's separate funds. [ECF Docs. 491 & 511]. A review of the Supplement provided by the Trustee reveals that only as much as $18,479.06 of the amounts asserted in proofs of claim against the estate are separate debts of the Debtor. [ECF Doc. 511].[5] Thus, the Trustee holds sufficient separate funds to pay the Debtor's separate debts with those funds. The Trustee, however, does not hold sufficient community funds to pay all community debts filed against the estate. While the Trustee continues to administer the estate, he seeks authority through the Motion to make a second interim distribution to undisputed general unsecured creditors.[6]

"Typically, distribution is not commenced until the Court approves a trustee's final report and accounting." *In re Bird*, 565 B.R. 382, 400 (Bankr. S.D. Tex. 2017) (citing *In re Van Gerpen*, 267 F.3d 453, 456–57 (5th Cir. 2001)). "Nonetheless, the Code does not bar an interim distribution, and when it benefits the estate to do so, the Court is authorized to approve any interim distribution using its authority pursuant to § 105(a)." *Id*. Further, the Trustee can be entitled to reasonable interim compensation for services rendered pursuant to 11 U.S.C. § 331. *See In re McCombs*, 436 B.r. 421, 441 (Bankr. S.D. Tex. 2010). Here, the deadline for filing proofs of claim

---

[5] The Trustee has objected to certain proofs of claim, the resolution of which may serve to disallow those claims; further, he is investigating other claimants' defenses and that analysis may result in the disallowance of those claims entirely or the recharacterization of portions of those debts as community property. [ECF Doc. 511, n. 1 & 2].

[6] Although Mr. Fantaci disagrees with the Trustee's characterization of certain proofs of claim as community debt, for the reasons discussed above, Mr. Fantaci does not have standing to object to proofs of claim.

has long passed and there is no risk that additional creditors will appear seeking a distribution from the Trustee. Administrative expense claims and priority unsecured claims have been paid in full. The Trustee is holding $798,664.74 and requests permission to distribute up to $500,000 *pro rata* to creditors holding *undisputed*, general unsecured claims (representing approximately 45.53% of filed claim amounts), plus pay his statutory commission on the actual distribution amount of $394,282.68.[7] This case has been pending since September 9, 2021, and is ongoing; therefore, the Court finds that a *pro rata*, interim distribution to undisputed general unsecured claims is in the best interests of creditors and the estate.

## CONCLUSION

For the reasons stated above, the Motion is **GRANTED**.

New Orleans, Louisiana, September 20, 2023.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE

---

[7] Because the Trustee disputes Proof of Claim No. 12, the Trustee seeks to escrow the proposed distribution amount of $105,717.32 pending resolution of that claim.